**PINE TREE LEGAL ASSISTANCE, INC.**

v.

**DEPARTMENT OF HUMAN SERVICES, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 23, 1995.

Decided March 22, 1995.

William B. Devoe (orally), Eaton, Peabody, Bradford & Veague, P.A., Bangor, for plaintiff.

Andrew M. Gattine (orally), Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

Pine Tree Legal Assistance, Inc., appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) affirming the decision of an administrative appeal committee that upheld the decision of the Department of Human Services, Bureau of Rehabilitation (Bureau) awarding a contract to C.A.R.E.S., Inc., instead of Pine Tree. Pine Tree contends that the appeal committee erred in upholding the award because the Bureau failed to follow proper procedures. We disagree, and accordingly we affirm the judgment.

## I.

In November 1992 the Bureau solicited proposals for a client assistance program contract by publishing a Request for Proposals (RFP) in accordance with the rules governing the competitive bid process for state contracts. The RFP stated: "A Review Pan-el selected by the Bureau of Rehabilitation will rate the proposals using the . . . numerically scored evaluation criteria." The RFP then specified the criteria and included a copy of the evaluation sheet. It also provided: "Final decisions regarding the award of the contract will be made by the Director of the Bureau of Rehabilitation, subject to the approval of the Commissioner of the Department of Human Services." No issue has been raised concerning the absence from the administrative record of any approval by the Commissioner.

In accordance with the RFP, the Bureau held a pre-bidders' conference for prospective applicants in December 1992. A representative of Pine Tree attended the conference. Thereafter, the Bureau circulated written responses to questions raised at the conference. One group of questions and corresponding answers read as follows:

How will proposals be reviewed? Are there changes from the previous review? Who will select the consumers for the review panel?

A review panel of consumers and rehabilitation providers will score the proposals and make a recommendation to the Bureau Management team for final selection subject to the approval of the Commissioner of Dept. of Human Services. A change in the review process is that the Bureau staff person will chair the Committee but will not participate in the scoring. Review panels members will be selected by the Chairpersons of the various Bureau consumer advisory committees.

The Bureau received five bids, including one from Pine Tree. It then distributed these five bids to a four-member review panel. The Bureau had hoped to form a larger panel, but several potential panelists were unable to participate. The chairperson by a memorandum instructed the panel members to review the bids and score them by assigning point values for the various categories on the evaluation sheet. The memorandum also instructed the members to meet "to discuss the scoring and develop a recommendation for Bureau Director regarding selection."

The review panel met accordingly. The minutes of the meeting reflect that the chair-

person "introduced the process noting that the group had two tasks: To review each proposal by item, and; To reach consensus on a proposal to recommend to the Director of the Bureau of Rehabilitation." When the panelists reviewed the proposals, each panelist submitted his or her score, item by item, for each proposal. Two panelists scored the Pine Tree proposal highest and two panelists scored the C.A.R.E.S. proposal highest. The averaged total point value for the Pine Tree proposal was 87.25. The averaged total point value for the C.A.R.E.S. proposal was 84.5. The averaged total point values for the other proposals were below these two scores. The panelists then tried to reach a consensus on the proposal that they would recommend to the director of the Bureau of Rehabilitation, Pamela Tetley. After discussion the panel failed to reach a consensus as to which proposal was best. The entry in the minutes states:

> The group agreed to send Pam Tetley the results of the voting as a tie between Pine Tree Legal and C.A.R.E.S. with the message that each of the applicants provided a good proposal, we are unable to come to consensus, and the Bureau needs to make its decision from between the two top applicants.

Tetley testified that after receiving these results without a clear recommendation, the Bureau decided to expand the pool of reviewers by convening a second panel and to combine the recommendations of this second set of reviewers with those of the first. Tetley then sent letters to each of the bidders informing them that the members of the panel "were unable to develop a clear consensus on which proposal should be selected ... with two participants recommending one proposal and the other two recommending the funding of another proposal." As an additional reason for convening a second panel, the letter stated: "a concern also has been raised about the appearance of lack of objectivity of part of the review process." Tetley later testified that this reference was to the fact that a panel member assisted another visually impaired panel member in reviewing the bids. The letter also informed the bidders that the Bureau would "convene a second panel within the next two weeks to complete the scoring process."

Again, due to the unavailability of potential panelists, the second panel consisted of only four members. Using the same criteria as the first panel, two of these members ranked as the highest the C.A.R.E.S. bid and two ranked as the highest the bid of Maine Advocacy Services. None of the members of the second panel ranked as the highest the bid of Pine Tree. The Bureau then totalled the first place rankings that each bidder received from the two panels combined and determined that, because C.A.R.E.S. had four first-place votes and Pine Tree and Maine Advocacy each had only two, C.A.R.E.S. should be awarded the contract. In March 1993 the Bureau informed Pine Tree that, based on the results of the eight reviewers, the Bureau had selected C.A.R.E.S. to provide client assistance services.

Pine Tree requested an appeal hearing pursuant to section 2(B) of the Rules for Appeal of Contract and Grant Awards promulgated by the Department of Administration, Bureau of Purchasing. Pine Tree argued that the decision to award the contract to C.A.R.E.S. was (1) in violation of the law because it was based on a ranking system not mentioned in the RFP; (2) affected by irregularities creating fundamental unfairness; and (3) arbitrary or capricious. Following a hearing, the appeal committee issued a decision validating the award of the contract to C.A.R.E.S. The committee found that "the decision to convene the second panel was necessitated by the concern that a member of the first panel has assisted another in the scoring and by the fact that the panel voted 2 to 2 and made no recommendation." Accordingly, the committee concluded that Pine Tree had failed to prove (1) that a violation of the law occurred; (2) the existence of any irregularities creating fundamental unfairness; or (3) that the action of the Bureau was arbitrary or capricious.

On July 9, 1993, Pine Tree filed a complaint for judicial review in the Superior Court pursuant to 5 M.R.S.A. §§ 11001–11008 (1989). Pine Tree appeals from the judgment affirming the appeal committee's decision.

## II.

Pursuant to 5 M.R.S.A. §§ 1825–C, 1825–E (Supp.1994), the Department of Administration, Bureau of Purchases has promulgated rules for appealing contract awards. Section 3(B) establishes three possible grounds for a successful appeal:

The burden of proof within the hearing of appeal lies with the petitioner. The evidence presented must specifically address and be limited to one or more of the following:

1. Violation of law;

2. Irregularities creating fundamental unfairness; or

3. Arbitrary or capricious award.

Section 4(A) defines the scope of the committee's inquiry and actions:

The Appeal Committee shall consider all evidence entered into the record and shall look for clear and convincing evidence that one or more of the standards set forth in section 3, subsection B, of these rules has been proven by the petitioner. The actions of the Committee are limited to one of the following:

1. Validate the contract award decision under appeal;

2. Invalidate the contract award decision under appeal.

## III.

▮ Pine Tree first contends that the Bureau violated the law. The State must purchase all goods and services for any of its departments or agencies through competitive bidding. 5 M.R.S.A. § 1825–B(1) (Supp. 1994). Pursuant to 5 M.R.S.A. §§ 1825–C, 1825–D(2) & (3), the Department of Administration, Bureau of Purchases has adopted rules governing the bid review process and award of contracts. Section 3(a) of these rules provides:

a. The contracting agency is responsible for reviewing all RFPs *based on the criteria established within the original Request for Proposal* document. The agency shall document the scoring, substantive information that supports the scoring, and make the award decision which shall be subject to the Contract Review Committee approval.

. . . .

iv. Award: *Award must be made to the highest rated proposal* which conforms to the requirements of the state as contained in the RFP.

(Emphasis added). The RFP in this instance provides in applicable part:

A Review Panel selected by the Bureau of Rehabilitation will *rate the proposals using the . . . numerically scored evaluation criteria. . . .* Final decisions regarding the award of the contract will be made by the Director of the Bureau of Rehabilitation, subject to the approval of the Commissioner of the Department of Human Services.

(Emphasis added). At the bidders' conference, the Bureau informed the bidders that the reviewers would "score the proposals and make a recommendation to the Bureau Management team for final selection subject to the approval of the Commissioner."

▮ Pine Tree argues that the RFP, in conjunction with the rules governing the award process, required the Bureau to award the contract to the bidder who received the most total points from the reviewers on the first panel. In essence, Pine Tree argues that the Bureau departed from the procedure established in the RFP by relying instead on the number of first-place votes each proposal captured after review by a second panel. According to Pine Tree, the appeal committee misinterpreted the RFP and the rules applicable to the award process when it determined that the Bureau's actions were lawful. We review the appeal committee's interpretation of these rules for error of law. *See Fraser v. Barton,* 628 A.2d 146, 148 (Me. 1993).

The rules, the RFP, and the bidders' conference memorandum do not address precisely how the Bureau must use the numerical scores in awarding the contract. The requirement that the "award must be made to the highest rated proposal" does not compel the Bureau to award the contract to the highest gross score as Pine Tree argues. Neither the rules nor the RFP state that the rating sheet scores, alone, control the Bu-

reau's decision. The Bureau's award to the bidder who received the most first-place votes as reflected by the evaluation sheets was not inconsistent with the required procedures.

Moreover, the bidders' conference memorandum stated that the reviewers would score the bids in order to make a *recommendation,* suggesting that the panel's objective was to reach a consensus, rather than to rely on a totalling of the reviewers' raw scores. Strict adherence to this mathematic formula is inconsistent with the search for consensus. Such a method gives disproportionate weight to the reviewer whose numerical scores have the greatest range.

In addition, the rules and the RFP do not provide a procedure in the event of a tie. The rules do not require that a point total be the deciding factor when the panel is unable to reach a consensus or fails to make a recommendation. They do not prohibit an agency from convening a second panel. We conclude that the appeal committee properly determined that the procedure followed in this instance was not a violation of the law.

## IV.

■ Pine Tree also contends that the Bureau improperly altered its method of selection after discovering that the two highest gross scores were too close to enable the panel to make a recommendation. Accordingly, Pine Tree argues that the decisions to use an ordinal ranking system and to convene a second panel constituted irregularities creating fundamental unfairness.

Because the Superior Court acted solely as an intermediate appellate tribunal, we review directly the decision of the appeal committee. *Nancy W. Bayley, Inc. v. Maine Employment Sec. Comm'n,* 472 A.2d 1374, 1377 (Me. 1984). Because the rule requires proof by clear and convincing evidence, Pine Tree could have prevailed only if it convinced the appeal committee that the truth of its factual contentions was highly probable, rather than merely more probable than not. *See Taylor v. Commissioner of Mental Health & Mental Retardation,* 481 A.2d 139, 153 (Me.1984). We will vacate the committee's determination that Pine Tree failed to carry its burden of proof on this issue only if the nature of the evidence is such that the committee was compelled to find Pine Tree's contentions highly probable.

The evidence in this case shows that the Bureau charged the original panelists with making a recommendation. Because they could not decide on a single bidder, the panelists recommended that the director decide between two bidders. Faced with this situation and no rules for dealing with it, the director convened a second panel and combined the first-place votes of that panel with those of the first. The combined ordinal rankings indicated that more panelists preferred C.A.R.E.S. than any other bidder. Although the Bureau's decision to award the contract to C.A.R.E.S. without the eight panelists ever having made a recommendation may have been a procedural irregularity, the evidence did not compel the appeal committee to believe that this irregularity rendered the selection process fundamentally unfair. Nor can it be said on this record that the decision was arbitrary or capricious.

The entry is:

Judgment affirmed.

All concurring.